UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

RECEIPT # 58236
AMOUNT $ 150
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE 8-26-04

PHYLLIS YACHIMSKI,
Plaintiff

V.

PRUDENTIAL INSURANCE COMPANY
OF AMERICA & VISTING NURSE
ASSOCIATION OF BOSTON, INC.
GROUP LONG TERM DISABILITY PLAN,

Defendants

CIVIL ACTION NO.

04

MAGISTRATE JUDGE _____

**COMPLAINT**

INTRODUCTION

1. Plaintiff, Phyllis Yachimski ("Ms. Yachimski"), brings this action against Defendants, Prudential Life Insurance Company of America ("Prudential") and Visiting Nurse Association of Boston, Inc. Group Long Term Disability Plan ("Plan") (collectively referred to as "Defendants") for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Ms. Yachimski is a participant in an ERISA welfare benefit plan that is underwritten and insured by Prudential. The name of the welfare benefit plan is the Visiting Nurse Association of Boston, Inc. Group Long Term Disability Plan. The policy number is 22768.

2. This Complaint challenges: (1) the Defendants unreasonable and unlawful termination of Ms. Yachimski's Long Term Disability ("LTD") benefits without appropriate justification and without granting her a full and fair review of her claim for benefits; (2) Prudential's pattern of rejecting and/or ignoring the substantial evidence supporting Ms. Yachimski's total disability pursuant to the terms of the Plan; and (3) Prudential's failure to provide a reasonable claims procedure that would yield a decision on the merits of Ms. Yachimski's claim.

3. Ms. Yachimski is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4. This court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

## PARTIES

5. Ms. Yachimski is a 63 year old woman who currently resides in Jamaica Plain, Massachusetts. Ms. Yachimski is a vested participant in a Prudential employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Yachimski has standing to bring this action under 29 U.S.C. § 1132(a).

6. Prudential Life Insurance Company of America ("Prudential") is a for-profit corporation with its principal place of business at 751 Broad Street, Newark, New Jersey, 07102-3777. Prudential transacts business in Massachusetts and insures and underwrites the Plan under which Ms. Yachimski is suing. Prudential is the

2

party responsible for processing claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

7. At all times relevant to the claims asserted in this Complaint, Prudential purported to act as an ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Ms. Yachimski, within the meaning of ERISA.

8. The Plan under which Ms. Yachimski is suing is a "long term disability plan" issued by Prudential and maintained continuously thereafter by Prudential. The Group Policy Number is 22768.

## STATEMENT OF FACTS

### Insurance Entitlement, Definitions of Disability, Discretion

9. Ms. Yachimski was a Registered Nurse who became disabled in June 1994, while working as a home health nurse at Visiting Nurse Association of Boston ("VNA").

10. Prudential both funds and administers the Plan under which Ms. Yachimski is suing.

11. The Plan does not contain any provisions giving independent and final discretion to Prudential to determine eligibility for benefits or to interpret the terms of the Plan.

12. The Plan provides for the payment of LTD benefits when an insured person becomes totally disabled. Total Disability is defined under the terms of the Plan in the following manner:

**Total Disability"** exists when Prudential determines that all of these conditions are met:

   (1) Due to Sickness or accidental injury, both of these are true:

3

      a. You are not able to perform, for wage or profit, the material and substantial duties of your occupation,

      b. After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

    (2) You are not working at any job for wage or profit.

    (3) You are under the regular care of a doctor.

13. The Plan defines the **"Initial Duration"** as the "Elimination Period plus the period extending to your attainment of age 65."

14. The Plan defines the **"Elimination Period"** as follows:

For each period of Total Disability due to Sickness or accidental injury, the first 13 weeks of continuous Total Disability.

15. The Maximum Benefit Duration for Ms. Yachimski, based upon her age at the date of the onset of her disability, is to her normal retirement age, but not less than sixty months.

16. Nowhere in the Plan is the term "your occupation" defined.

## Ms. Yachimski's Claim for LTD Benefits

17. Ms. Yachimski has presented a timely claim to Prudential, asserting that she is an insured person, that she became totally disabled while insured, and that she is entitled under the Plan to LTD benefits for the period of time beginning on September 1, 2001, when Prudential wrongfully terminated her benefits, and continuing thereafter without interruption through to the present, and continuing in the future until she reaches the age of 65 or is no longer totally disabled.

## Background/Onset of Illness

18. Ms. Yachimski was employed throughout her entire professional career as a Registered Nurse.

4

19. In June 1990, while working full time as a Staff Nurse at the Visiting Nurses Association ("VNA") of Boston, Massachusetts, Ms. Yachimski suffered a postereolateral myocardial infarction ("MI") and was hospitalized at Beth Israel Hospital ("BIH") in Boston. Ms. Yachimski's hospitalization was complicated by transient right heart failure, hypotension and significant iron deficiency anemia. During her hospitalization, a radioiodine scan confirmed that she had hyperthyroidism, leading to a diagnosis of Graves' disease.

20. Graves' disease is an autoimmune disorder in which the immune system produces antibodies that attack the thyroid gland, resulting in overproduction of thyroid hormones. In most cases, symptoms of Graves' disease include weight loss, rapid heart rate, tremor, anxiety, insomnia, and muscle weakness.

21. Ms. Yachimski experienced all of the symptoms of Graves' disease.

22. Upon her discharge from BIH, Ms. Yachimski was placed on several cardiac and thyroid medications, including inderal, isordil, propylthiouracil ("PTU") and aspirin. Ms. Yachimski's Graves' disease was very difficult to control during this time period.

23. In October 1990, Ms. Yachimski began experiencing heavy, prolonged menstrual bleeding. A hysterogram performed in December 1990 showed a submucosal fibroid, and was believed to be the cause of her vaginal bleeding.

24. On or about February 6, 1991, Ms. Yachimski was admitted to BIH with nausea and abdominal discomfort. Ms. Yachimski subsequently underwent a hysteroscopy and hysteroscopic removal of an endometrial fibroid.

25. In 1992, Ms. Yachimski continued to experience serious health problems, including being diagnosed with breast cancer.

26. On January 31, 1992, Ms. Yachimski had a right breast mass excised at BIH. The mass was determined to be an infiltrating ductal carcinoma. On February 13, 1992, Dr. Marc S. Rubin, M.D., performed a re-excision of the mass and axillary dissection. She received post operative radiation treatment and tamoxifen therapy.

27. In 1993, Ms. Yachimski's health was further compromised by gynecological problems, including cervical dysplasia, ultimately requiring a surgical cervical conization with D&C.

28. In early 1994, Ms. Yachimski began experiencing nausea, weight loss and severe diarrhea, which ultimately led to her being diagnosed with Crohn's disease.

29. Crohn's disease is a chronic illness that can cause significant health problems throughout life, as it often recurs intermittently.

30. Dr. Gerald Smetana, M.D., Ms. Yachimski's primary care provider, placed Ms. Yachimski on 40 m.g. per day of prednisone in order to decrease the severe diarrhea and abdominal cramping associated with Crohn's disease.

31. In addition to the severe abdominal symptoms Ms. Yachimski experienced during that time, she also developed significant back pain, which was subsequently diagnosed as sacroileitis, which is often attributed to Crohn's disease.

32. It was during this time that Dr. Smetana noted that Ms. Yachimski was disabled due primarily to the debilitating symptoms associated with her Crohn's disease.

33. Ms. Yachimski's severe abdominal symptoms continued throughout 1995, prompting Dr. Smetana to refer Ms. Yachimski to Dr. Stevens, a gastroenterologist, for a colonoscopy to rule out other possible causes of her severe diarrhea, cramping and nausea.

34. The colonoscopy performed in April 1995 showed Grade I Colitis and a flare up of her Crohn's disease, which according to Dr. Stevens may have been due, in part, to a decrease in her daily dose of prednisone.

35. Again, during this time, Dr. Smetana reiterated his belief that due to active Chrohn's Disease requiring intermittent medium to high dose steroid treatment, Ms. Yachimski was still unable to resume her work at that time. Dr. Smetana opined that Ms. Yachimski's steroid treatment had resulted in increased irritability, forgetfulness and "easy fatigability with respect to her complex intellectual tasks."

36. As is often the case with Crohn's disease, Ms. Yachimski continued to experience a worsening of her symptoms. Specifically, she had increased episodes of nausea and diarrhea requiring an increase in her daily prednisone dosage.

37. In August 1999, Ms. Yachimski began experiencing chills, fever, sweats, chest tightness and shortness of breath. She was subsequently hospitalized for pneumonia. After her discharge from the hospital she continued to have a persistent left lower lobe atelectasis (collapse), and her recovery was slow.

38. In October 1999, cardiac testing showed severe mitral regurgitation and ventricular dysfunction resulting in a significantly decreased Ejection Fraction

7

("EF") of only 40%, which was believed to have contributed to Ms. Yachimski's shortness of breath during exertion.

39. As a result of her worsening cardiac status, Ms. Yachimski underwent cardiac surgery for a mitral valve replacement on January 6, 2000. After her surgery, Ms. Yachimski's heart condition improved significantly with cardiac rehabilitation.

40. Ms. Yachimski continues to experience shortness of breath and fatigue.

41. As a result of the symptoms of her combined illnesses, Ms. Yachimski has remained unable to perform the intellectually and physically demanding tasks that staff nursing requires.

## Application For and Receipt of Long-Term Disability Benefits

42. Prudential determined, in 1994, that Ms. Yachimski was totally disabled effective approximately June 13, 1994, as a result of the side effects of her illness and the prednisone therapy, which was being used to treat and control her Crohn's disease.

43. Ms. Yachimski received LTD benefits from Prudential from December 27, 1994 through August 23, 2001.

## Termination of Benefits

44. On August 23, 2001, Prudential abruptly terminated Ms. Yachimski's benefits, despite no improvement or change in her medical condition.

45. Prudential's decision to terminate Ms. Yachimski's benefits was based upon a review of Ms. Yachimski's records performed by Elizabeth Genovese, M.D.

46. Dr. Genovese has never examined Ms. Yachimski.

47. Dr. Genovese improperly relied primarily upon Ms. Yachimski's cardiac status as a basis for her conclusion that Ms. Yachimski is not currently disabled, and failed to address Ms. Yachimski's primary disabling symptoms as a part of her review.

48. Prudential's August 30, 2001 denial was further based upon a mischaracterization of Ms. Yachimski's occupation as a Nurse Supervisor as opposed to the more physically demanding occupation of a Staff Nurse.

## Ms. Yachimski's Appeal of Prudential's Termination of Benefits

49. On November 19, 2001, Ms. Yachimski appealed Prudential's termination of her LTD benefits, submitting a detailed document, which included medical and vocational information supporting Ms. Yachimski's total disability pursuant to the terms of the Plan.

## Second Denial Of Benefits

50. On July 1, 2002, Prudential upheld its decision to terminate Ms. Yachimski's benefits.

51. Prudential's July 1, 2002 denial of benefits informed Ms. Yachimski that she "may again appeal this decision. If you elect to do so, the appeal must be in writing."

## Ms. Yachimski's Current Medical Condition

52. On May 31, 2004, Ms. Yachimski suffered a stroke, which affected her ability to communicate and to read.

53. Ms. Yachimski continues to be disabled as a result of the debilitating side effects of combined medical conditions.

9

54. Ms. Yachimski has been continuously unable to perform the material and substantial duties of her own occupation as a Staff Nurse since 1994.

55. Prudential failed to independently consider Ms. Yachimski's medical records and the opinions of her treating physicians in reaching its final decision to deny her claim.

56. The self-serving nature of Prudential's decision that Ms. Yachimski is no longer disabled is illuminated by the fact that Ms. Yachimski's condition has not changed since Prudential first accepted liability on her claim for benefits, seven years before the date it terminated Ms. Yachimski's benefits.

57. The decision to deny Ms. Yachimski's benefits was wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Plan and contrary to law.

58. Prudential's review of Ms. Yachimski's claim is further compromised by its apparent failure to review Ms. Yachimski's claim under the correct plan at various points during the appeal process.

59. Prudential's review of Ms. Yachimski's claim is further compromised by its failure to evaluate Ms. Yachimski's disability pursuant to Ms. Yachimski's own occupation.

60. Prudential was influenced by its financial conflict of interest, as both the administrator of the plan and the payor of benefits thereunder, when it denied Ms. Yachimski's benefits.

61. Due to the unlawful denial of benefits under ERISA, Ms. Yachimski has lost her rightful long-term disability benefits. She has also suffered emotional distress and humiliation as a result of Prudential's actions.

62. Having exhausted the mandatory administrative procedures provided by Prudential, Ms. Yachimski now brings this action.

## FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan Action for Unpaid Benefits)
### (ALL DEFENDANTS)

63. Ms. Yachimski realleges each of the paragraphs above as if fully set forth herein.

64. The Plan is a contract.

65. Ms. Yachimski has performed all of her obligations under the contract.

66. 29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

(1) by a participant or beneficiary --

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

67. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

68. The Defendants unlawfully denied Ms. Yachimski's benefits in part by: (1) unreasonably rejecting the substantial evidence supporting Ms. Yachimski's total disability pursuant to the terms of the Plan; and (2) denying Ms. Yachimski a full and fair review of the decision to deny her benefits.

69. In accordance with 29 U.S.C. §1132, Ms. Yachimski is entitled to be paid benefits under the Plan based upon her disabled status from and after September 1, 2001, and continuing into the present.

70. The Defendants have refused to provide Ms. Yachimski with these disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

71. As a direct and proximate result of this breach, Ms. Yachimski has lost the principal and the use of her rightful LTD benefits.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

72. Ms. Yachimski realleges each of the paragraphs above as if fully set forth herein.

73. Under the standards applicable to ERISA, Ms. Yachimski deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

74. The Defendants have the ability to satisfy the award.

75. Ms. Yachimski's conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

76. The Defendants have acted in bad faith in denying Ms. Yachimski's benefits under the Plan.

77. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge and decree that Ms. Yachimski is entitled to ongoing long-term disability benefits as calculated under the terms of the Plan.

(2) Award Ms. Yachimski the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law.

(3) Order that the Defendants make restitution to Ms. Yachimski in the amount of any losses sustained by Ms. Yachimski in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Ms. Yachimski the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief, as the court deems just and reasonable.

Dated: August 25, 2004

Respectfully submitted for the Plaintiff,

PHYLLIS YACHIMSKI

By: /s/ Mala Rafik
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
617-723-7470

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
PHYLLIS YACHIMSKI

## DEFENDANTS
PRUDENTIAL INSURANCE COMPANY OF AMERICA & VISITING NURSE ASSOCIATION OF BOSTON, INC. GROUP LONG TERM DISABILITY PLAN

(b) County of Residence of First Listed Plaintiff **SUFFOLK**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorneys (Firm Name, Address, and Telephone Number)
Mala M. Rafik
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108
(617) 723-7470

Attorneys (If Known)

04

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- **X** 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | **X** 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- **X** 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

The Plaintiff files this action under ERISA, 29 U.S.C. §1132(a) to recover disability benefits due her under her long-term disability plan administered by Prudential Life Insurance Company of America.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 8-25-04
SIGNATURE OF ATTORNEY OF RECORD
Mala Rafik

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)     PHYLLIS YACHIMSKI V. PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   ___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
            N/A

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                                    YES ☐     NO X

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

                                                    YES ☐     NO X

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                    YES ☐     NO X

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                                    YES ☐     NO X

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                                    YES X     NO ☐

   A.  IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

       EASTERN DIVISION  X      CENTRAL DIVISION ☐      WESTERN DIVISION ☐

   B.  IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

       EASTERN DIVISION ☐       CENTRAL DIVISION ☐      WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME     MALA M. RAFIK

ADDRESS     ROSENFELD & RAFIK, P.C., 44 SCHOOL STREET, SUITE 410, BOSTON, MA 02108
TELEPHONE NO.     (617) 723-7470

(CategoryForm[1].wpd - 11/27/00)